UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JIMMY L.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 2:18-CV-01721-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 4.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to provide specific, legitimate reasons, supported by substantial evidence, to discount medical opinion evidence from Dr. John Kwock, M.D., and Dr. Lowell Finkleman, M.D. Had the ALJ properly considered this medical opinion evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's errors are therefore not

harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On June 20, 2013, Plaintiff filed an application for SSI, alleging disability as of October 3, 2012. *See* Dkt. 10, Administrative Record ("AR") 633. The application was denied upon initial administrative review and on reconsideration. *See* AR 633. ALJ Kelly Wilson held the first hearing on December 3, 2014. AR 33-66. In a decision dated April 21, 2015, ALJ Wilson found Plaintiff to be not disabled. AR 9-30. After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Plaintiff appealed ALJ Wilson's decision to the United States District Court for the Western District of Washington ("Court"), which reversed and remanded the decision. *See* AR 1-6, 733-44. Pursuant to the Court's Order, the Appeals Council vacated ALJ Wilson's decision and remanded Plaintiff's claim to the ALJ "for further proceedings consistent with the" Order. AR 748.

On May 29, 2018, ALJ Kimberly Boyce held the second hearing. AR 659-94. In a decision dated September 20, 2018, the ALJ[1] determined Plaintiff to be not disabled. AR 630-58. The ALJ's September 20, 2018 decision is the final decision of the Commissioner, which Plaintiff now appeals.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to: (1) provide specific, legitimate reasons to reject medical opinion evidence from Dr. Kwock, Dr. Finkleman, and Dr. Charles Settle, M.D.; and (2) provide legally sufficient reasons to reject Plaintiff's

---

[1] When stating "the ALJ" or "the ALJ's decision" throughout this Order, the Court is referring to ALJ Boyce and her September 20, 2018 decision.

subjective symptom testimony. Dkt. 12, pp. 3-18. Plaintiff requests the Court remand this matter for an award of benefits. *Id.* at p. 18.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.     Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff challenges the ALJ's assessment of medical opinion evidence from Drs. Kwok, Finkleman, and Settle. Dkt. 12, pp. 3-15.

In assessing an acceptable medical source, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A.  Dr. Kwock

Plaintiff argues the ALJ erred in rejecting Dr. Kwock's opinion that Plaintiff is limited to sitting for up to four hours in an eight-hour workday. Dkt. 3-11.

Dr. Kwock, who reviewed the medical evidence in this matter, testified at the second hearing. *See* AR 664-74. Dr. Kwock opined Plaintiff can perform work at the sedentary exertional level and can lift and carry up to 10 pounds on an occasional basis but can never lift or carry more than 11 pounds. AR 669. Further, Dr. Kwock determined Plaintiff can balance frequently; climb ramps, stoop, and kneel occasionally; and can never climb ladders or scaffolds, crawl, work in unprotected heights, or work in proximity to moving machinery. AR 669-70. Dr. Kwock also opined Plaintiff can walk for up to two hours in an eight-hour workday and sit for up to four hours in an eight-hour workday. AR 669.

The ALJ gave "significant weight" to Dr. Kwock's opinion, "with some exceptions." AR 647. In particular, the ALJ rejected Dr. Kwock's opinion that Plaintiff can sit for four hours because:

> **(1)** [Dr. Kwock] did not elaborate on why the claimant would not be able to sit for a total of six hours. **(2)** Based on the examination and opinion of Dr. Gaffield, I find the claimant is capable of sitting for six hours in an eight hour day. **(3)** I also note that while Dr. Kwock cited Dr. Gaffield's physical examination findings, he did not address the indications of exaggerated symptoms during this evaluation as discussed above. **(4)** Instead, Dr. Kwock suggested Dr. Gaffield found 4/5 bilateral weakness in the lower extremities. However, according to Dr. Gaffield's examination records this deficit was related to the claimant's complaints of back pain. **(5)** To the extent Dr. Kwock's limitations exceed those described in the [RFC] they are inconsistent with observations the claimant routinely appeared in no acute, apparent, or obvious stress, presented with all normal findings in his constitutional examination, or appeared "well" or "healthy" as discussed above.

AR 647 (citations omitted) (numbering added).

Defendant contends the ALJ's first, third, and fifth reasons for rejecting Dr. Kwock's opinion are legally sufficient. Dkt. 13, pp. 4-6. First, the ALJ rejected Dr. Kwock's opinion that

Plaintiff can sit for four hours in an eight-hour workday because she found Dr. Kwock "did not elaborate on why the claimant would not be able to sit for a total of six hours." AR 647. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). But an ALJ's findings must be supported by substantial evidence in the record as a whole. *Id.* at 1214 n.1.

Here, the record shows that, contrary to the ALJ's finding, Dr. Kwock provided an explanation as to how he formed his opinion. Specifically, after the ALJ asked Dr. Kwock what he could cite "to support the limitations" he opined, Dr. Kwock referenced several studies of Plaintiff's spine and physical examinations of Plaintiff as support for his opinion. *See* AR 670-72. After referencing these studies and examinations, Dr. Kwock summarized the bases for his opinion:

> I think for those reasons, the record is mixed enough that I think in this particular case I had in my initial thinking that leans towards the conservative side for this individual simply because of the changes still in the objective radiological studies of both cervical and lumbar spine, and the somewhat conflicting postoperative physical examinations that were present and done in the record.

AR 672. The ALJ responded by confirming with Dr. Kwock that he "took into account" certain MRI findings. *See* AR 672. Dr. Kwock responded:

> That is correct. I took into account the fact that there are still multiple, very significant objective changes in the radiological studies, the fact that the EMGs[2] have suggested still root involvement, and the fact that he had conflicting physical findings done postoperatively.

AR 672.

---

[2] "EMG" is the abbreviation for "electromyogram," which is a form of electrodiagnosis that includes "nerve conduction studies and needle electrode examination[s]." *See* 282810, 283110, 285930 STEDMANS MEDICAL DICTIONARY (2014).

Hence, Dr. Kwock elaborated that all of the limitations he opined were based on the various studies and physical examinations of Plaintiff's spine. *See* AR 670-72. As the record shows Dr. Kwock provided an explanation as to how he rendered his opinion, including the opined sitting limitation, the ALJ's finding that Dr. Kwock did not elaborate on the opined sitting limitation is not supported by substantial evidence in the record.

Defendant also argues the ALJ's third reason for discounting Dr. Kwock's opinion is sufficient. Here, the ALJ "note[d] that while Dr. Kwock cited Dr. Gaffield's physical examination findings, he did not address the indications of exaggerated symptoms during [Dr. Gaffield's] evaluation[.]" AR 647. Though he failed to directly state it, the Court presumes – and the parties agree – the ALJ was likely referring to the notes in Dr. Gaffield's examination on Waddell's signs. *See* AR 647; Dkt. 13, pp. 4-5; Dkt. 14, p. 3. "Physicians use Waddell tests to detect nonorganic sources, such as psychological conditions or malingering, for lower back pain." *Reinertson v. Barnhart*, 127 Fed. Appx. 285, 289 (9th Cir. 2005) (citing Gordon Waddell et al., NONORGANIC PHYSICAL SIGNS IN LOW–BACK PAIN, 5 Spine 117, 118 (Mar.-Apr. 1980)). But "the Waddell test does not by itself constitute 'affirmative evidence' of malingering." *Wick v. Barnhart*, 173 Fed. Appx. 597, 598 (9th Cir. 2006). Further, an ALJ cannot reject a physician's opinion in a vague or conclusory manner. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)); *Embrey*, 849 F.2d at 421-22. As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, *even when the objective factors are listed seriatim*. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey,* 849 F.2d at 421 (emphasis added).

The ALJ's reasoning in this case was conclusory in multiple ways. She failed, for instance, to explain what purported "indication of exaggerated symptoms" she was referring to in Dr. Gaffield's examination. *See* AR 647. Moreover, the ALJ did not explain how Dr. Kwock's failure to address Dr. Gaffield's "indication of exaggerated symptoms" undermined Dr. Kwock's opinion. *See* AR 647; *see also Embrey*, 849 F.2d at 421-22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings"). Hence, this is not a sufficiently specific reason to reject Dr. Kwock's opined limitation regarding Plaintiff's ability to sit.

In the fifth reason for discounting Dr. Kwock's opinion, which Defendant argues is proper, the ALJ found Dr. Kwock's opinion inconsistent with examinations showing Plaintiff "in no acute, apparent, or obvious stress, present[ing] with all normal findings in his constitutional examination, or appear[ing] 'well' or 'healthy.'" AR 647 (citing AR 911, 916, 934, 961, 968, 984, 1020, 1023, 1039, 1041, 1079, 1081, 1111, 1125, 1135, 1151, 1161, 1170, 1180, 1193, 1202, 1212, 1222, 1231, 1241, 1253, 1315, 1352). An ALJ may properly reject a physician's opinion which is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given); *see also Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 602-03 (9th Cir. 1999) (a medical report's inconsistency with the overall record constitutes a legitimate reason for discounting the opinion). Yet as explained above, the ALJ must provide his interpretations of the evidence and explain why those interpretations, rather than the physician's interpretations, are correct. *See Embrey,* 849 F.2d at 421.

Here, though the ALJ described general findings from the records she cited, she "merely states" these records "point toward an adverse conclusion" but "makes no effort to relate any of

these" facts to "the specific medical opinions and findings [she] rejects." *See id.*; *see also* AR 647. Due to the conclusory nature of the ALJ's statement, this is not a specific, legitimate reason to discount the weight assigned to Dr. Kwock's opinion. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

The ALJ's conclusory statement also overlooks abnormal objective findings in the records she cites which support Dr. Kwock's opinion. *See, e.g.*, AR 911 (constitutional symptoms positive for fatigue; musculoskeletal examination positive for back pain); AR 983 (musculoskeletal examination positive for arthralgias and neck pain and stiffness); AR 1020 (physician examination shows Plaintiff's movements slow; neck range of motion ("ROM") 50% of normal range; positive Spurling test[3] on right side); AR 1024 (EMG study shows cervical radiculopathy, "moderate-to-severe stenosis at 3 levels" and "fairly significant stenosis at adjacent levels"); AR 1079 (lumbar spine MRI shows "severe spinal canal stenosis with crowding of cauda equina nerve roots as well as severe bilateral neural foraminal stenosis"); AR 1352 (decreased ROM of cervical spine in flexion, rotation, and extension; decreased lumbar flexion); *see also* AR 1151, 1180, 1193-94, 1202 (all noting tenderness in mid to lower back; decreased ROM); AR 1222, 1231, 1241 (all finding decreased ROM in cervical and lumbar spine).

In sum, while some of the records the ALJ cited show Plaintiff not in "obvious stress" or appearing "well," nearly all the records cited by the ALJ contain other abnormal findings which

---

[3] A Spurling test evaluates "cervical nerve root impingement[.]" 908330 STEDMANS MEDICAL DICTIONARY (2014).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8

lend support to Dr. Kwock's opinion. The Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *See Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Therefore, considering the context of these records, the ALJ's finding that Dr. Kwock's opinion is inconsistent with observations in the record is not supported by substantial evidence. *See Reddick*, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. [Her] paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

Defendant does not assert, nor does the Court find, the ALJ's second or fourth reasons to discount Dr. Kwock's opinion are specific and legitimate. *See Garrison*, 759 F.3d at 1012-13 ("An ALJ errs when [she] rejects a medical opinion or assigns it little weight while . . . asserting without explanation that another medical opinion is more persuasive."); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

The ALJ failed to provide any specific and legitimate reason, supported by substantial evidence, to discount Dr. Kwock's opinion. Accordingly, the ALJ erred.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The Ninth

1 | Circuit has held "'a reviewing court cannot consider an error harmless unless it can confidently
2 | conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a
3 | different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)
4 | (quoting *Stout*, 454 F.3d at 1055-56). The determination as to whether an error is harmless
5 | requires a "case-specific application of judgment" by the reviewing court, based on an examination
6 | of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'"
7 | *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Here, had the ALJ properly considered Dr. Kwock's opinion, the RFC and hypothetical questions posed to the vocational expert ("VE") may have reflected Dr. Kwock's opinion that Plaintiff can sit for up to four hours in an eight-hour workday. *See* AR 669. The RFC and hypothetical questions did not contain this limitation, and instead found Plaintiff could sit for six hours in an eight-hour work day. *See* AR 638-39, 690. Because the ultimate disability determination may have changed with proper consideration of Dr. Kwock's opinion, ALJ's errors are not harmless and require reversal.

B. <u>Dr. Finkleman</u>

Plaintiff also asserts the ALJ failed to properly consider medical opinion evidence from Dr. Finkleman. Dkt. 12, pp. 11-14.

Dr. Finkleman is one of Plaintiff's treating physicians, and he completed two nearly identical Physical Functional Evaluation forms on June 13, 2013 and November 21, 2013. *See* AR 264-66, 304-06. Dr. Finkleman noted that Plaintiff's chief complaints included\ persistent low back pain, sciatica, multilevel degenerative disc disease, and persistent neck pain. AR 264, 304. He wrote Plaintiff's treatment history includes chiropractic care, physical therapy, a pain management consultation, a neurosurgery consultation, epidural steroid injections, and

diagnostic imaging. *See* AR 264, 304. Dr. Finkleman opined Plaintiff's low back pain and sciatic markedly impact his ability to sit, stand, walk, lift, carry, reach, stoop, and crouch. AR 265, 304. Further, Dr. Finkleman determined Plaintiff's persistent neck pain have a moderate-to-marked impact on his ability to lift, carry, and reach. *See* AR 265, 305. Dr. Finkleman likewise rated Plaintiff's situational depression as having a moderate-to-marked effect on his ability to work. *See* AR 265, 305. In all, Dr. Finkleman opined Plaintiff is severely limited in his ability to perform regular and predictable work, indicating he found Plaintiff unable to meet the demands of sedentary work. *See* AR 266, 306. On both forms, Dr. Finkleman wrote Plaintiff's current limitations would persist for 6-12 months. AR 266, 306.

Dr. Finkleman completed another evaluation form, dated January 14, 2014, which allowed Plaintiff to use door-to-door paratransit services. AR 508. On this form, Dr. Finkleman checked a box indicating he found Plaintiff "unable to independently negotiate distance of ¾ of a mile or less without assistance." AR 508. Dr. Finkleman included a handwritten note that "[t]his is temporary for 3 months." AR 508.

In the previous Order in this matter, the Court found the ALJ harmfully erred in rejecting Dr. Finkleman's opinions. *See* AR 740-44. On remand, the ALJ summarized Dr. Finkleman's opinions and assigned them "little weight" for five reasons:

> **(1)** [T]he objective medical evidence does not support Dr. Finkleman's opinion regarding the claimant's limitations. **(2)** As noted above, there is evidence the claimant embellished is [sic] presentation during examinations to portray himself as more significantly limited. **(3)** I also note Dr. Finkleman's January 2014 opinion limited the claimant for only a three-month period, indicating his symptoms are only temporary and likely to improve. **(4)** In addition to the above, I note Dr. Hale specifically considered Dr. Finkleman's opinions and concluded they relied heavily on the claimant's subjective reports of symptoms and limitations, and the totality of the evidence did not support these opinions. **(5)** Finally, Dr. Finkleman's extreme limitations are inconsistent with the observations the claimant routinely appeared in no acute, apparent, or obvious

stress, presented with all normal findings in his constitutional examination, or appeared "well" or "healthy" as discussed above.

AR 647-48 (citations omitted) (numbering added).

Defendant argues the ALJ's third, fourth, and fifth reasons for rejecting Dr. Finkleman's opinions are proper. *See* Dkt. 13, pp. 6-7. In her third reason for rejecting Dr. Finkleman's opinion, the ALJ noted that Dr. Finkleman's January 2014 opinion limited Plaintiff for "a three-month period, indicating his symptoms are only temporary and likely to improve." AR 648. The "law of the case doctrine" applies in the social security context. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Under this doctrine, "[t]he decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (quotation marks and citation omitted). Therefore, a court is precluded from revisiting issues which have been decided – either explicitly or implicitly – in a previous decision of the same court or a higher court. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). The doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567.

Additionally, "as a general principle, the United States Supreme Court has recognized that an administrative agency is bound on remand to apply the legal principles laid down by the reviewing court." *Ischay v. Barnhart,* 383 F.Supp.2d 1199, 1213–1214 (C.D. Cal. 2005); *see Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) (citations omitted) (deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review). Accordingly, on remand, the ALJ must follow the specific instructions of the reviewing court. *See Stacy*, 825 F.3d at 567-69.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12

In the previous ALJ decision, ALJ Wilson found Dr. Finkleman only limited Plaintiff for a three-month period in his January 2014 opinion. AR 23. But the Court, in its last Order, held this reasoning was not specific, legitimate, or supported by substantial evidence:

> [T]he only reasonable interpretation of Dr. Finkleman's handwritten note . . . was that paratransit services should only be offered on a temporary basis. Dr. Finkleman's notation does not, as the ALJ asserts, establish that Dr. Finkleman believed [P]laintiff would only be limited for 'a three-month period, indicating his symptoms are only temporary and likely to improve.'

AR 743. Thus, the Court has already found Dr. Finkleman did not opine Plaintiff would only be limited for a three-month period or that his symptoms were temporary. *See* AR 743. As the ALJ provided the same reasoning as ALJ Wilson, Court affirms the previous determination from this Court and again finds this is not a specific, legitimate reason to reject Dr. Finkleman's January 2014 opinion. Further, by relying on reasoning stated by ALJ Wilson that the Court previously rejected, the ALJ erred by violating instructions from this Court and the Appeals Council, which ordered her to conduct further proceedings consistent with the Court's Order. *See Trujillo v. Astrue*, 2011 WL 5870080, at *6-7 (C.D. Cal. Nov. 22, 2011) (an ALJ commits legal error when she fails to follow the remand order of the district court and Appeals Council); *Ischay*, 383 F.Supp.2d at 1217 (the ALJ erred when he failed to follow the Appeals Council's remand, which directed the ALJ to conduct further proceedings consistent with the order of the court). Therefore, this is not a specific, legitimate reason to reject Dr. Finkleman's opinions.

In the fourth reason for rejecting Dr. Finkleman's opinions, the ALJ noted Dr. Gordon Hale, M.D., who reviewed the record, concluded that Dr. Finkleman "relied heavily" on Plaintiff's subjective reports "and the totality of the evidence did not support [Dr. Finkleman's] opinions." AR 648 (citing AR 90). An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan*, 169 F.3d at 602). This situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

Here, to the extent the ALJ intended to reject Dr. Finkleman's opinions because Dr. Finkleman relied heavily on Plaintiff's reports, this was error. The Court, in its previous Order, held Dr. Finkleman's evaluations "indicate that he relied to a great extent upon objective evidence documenting [P]laintiff's symptoms, such as a positive EMG test and the multilevel cervical disc disease shown on Plaintiff's MRI." AR 742 (citing AR 264). As the ALJ's present reasoning runs contrary to the Court's Order, the ALJ erred. *See Stacy*, 825 F.3d at 567-68; *see also Hall*, 697 F.3d at 1067.

Moreover, the ALJ's reasoning is conclusory. The ALJ failed to explain how Dr. Hale's findings undermine Dr. Finkleman's opinions. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) ("[T]he ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence"). In addition, as previously stated, an ALJ errs when he rejects a medical opinion while "asserting without explanation that another medical opinion is more persuasive[.]" *Garrison*, 759 F.3d at 1012-13. In this instance, the ALJ's reasoning gave greater weight to Dr. Hale without explanation as to why his findings were more persuasive than Dr. Finkleman's indications that he relied on tests and physical examinations of Plaintiff to form his opinions. *See* AR 648; *see also Garrison*, 759 F.3d at 1012 (citation omitted) ("Where an ALJ does not . . . set

forth specific, legitimate reasons for crediting one medical opinion over another, he errs."). Considering the ALJ's failure to account for the previous findings of this Court and the conclusory nature of the ALJ's statement, this is not a specific, legitimate reason to reject Dr. Finkleman's opinions.

In her fifth reason for rejecting Dr. Finkleman's opined limitations, the ALJ found the "extreme limitations" inconsistent with observations showing Plaintiff "in no acute, apparent, or obvious distress, present[ing] with all normal findings in his constitutional examination, or appear[ing] 'well' or 'healthy.'" AR 648 (citations omitted). This is the same legally erroneous reason the ALJ gave to discount Dr. Kwock's opinion. *Compare* AR 647 *with* AR 648. However, as previously explained, such reasoning is invalid, as the ALJ's reasoning is conclusory and overlooks supporting findings. *See Reddick*, 157 F.3d at 722-23; *McAllister*, 888 F.2d at 602; *Embrey*, 849 F.2d at 421-22; *see also* AR 742-43 (previous Court Order, describing physical examinations and imaging studies that support Dr. Finkleman's opinions). Hence, the ALJ's fifth reason for rejecting Dr. Finkleman's opinions is erroneous.

Lastly, Defendant does not argue the ALJ's first or second reasons to rejecting Dr. Finkleman's opinions were proper. *See* Dkt. 13, pp. 6-7. The Court finds these reasons are not specific and legitimate, nor supported by substantial evidence. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

The ALJ failed to provide any specific, legitimate reason, supported by substantial evidence, to reject Dr. Finkleman's opinions. Thus, the ALJ erred. The RFC and hypothetical questions may have contained greater limitations with proper consideration of Dr. Finkleman's

opinions. As the ultimate disability decision may have changed, the ALJ's errors are not harmless. *See Molina*, 674 F.3d at 1115.

C. <u>Dr. Settle</u>

Plaintiff maintains the ALJ failed to provide specific, legitimate reasons to reject Dr. Settle's medical opinion. Dkt. 12, pp. 14-15. Dr. Settle rendered an opinion containing similar limitations to those opined by Dr. Finkleman. *Compare* AR 264-66, 304-06 (Dr. Finkleman's opinions) *with* AR 952-56 (Dr. Settle's opinion). The ALJ provided two of the same reasons to reject Dr. Settle's opinion as he did in rejecting Dr. Finkleman's opinions. *See* AR 648. The Court has determined the ALJ committed harmful error in her assessment of Dr. Finkleman's opinions and has directed the ALJ to reassess these opinions on remand. Given that Drs. Finkleman and Settle opined to similar limitations, proper consideration of Dr. Finkleman's opinions may impact the ALJ's assessment of Dr. Settle's opinion. As such, the Court declines to consider whether the ALJ erred in assessing Dr. Settle's opinion and instead directs the ALJ to re-evaluate Dr. Settle's opinion on remand, in light of her new assessment of Dr. Finkleman's opinions.

**II.    Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.**

Plaintiff argues the ALJ improperly assessed Plaintiff's subjective symptom testimony. Dkt. 12, pp. 15-18. As Plaintiff will be able to present new evidence and testimony on remand, and because proper consideration of the medical opinion evidence may impact the ALJ's assessment of Plaintiff's subjective symptom testimony, the Court need not decide whether the ALJ erred in evaluating Plaintiff's testimony. Instead, the Court instructs the ALJ to reweigh Plaintiff's subjective symptom testimony as necessary on remand.

**III. Whether an award of benefits is warranted.**

Plaintiff requests this matter be remanded with a direction to award benefits. Dkt. 10, p. 18. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

The undersigned has determined the ALJ committed harmful error and has instructed the ALJ to reassess medical opinion evidence from Drs. Kwock, Finkleman, and Settle, and Plaintiff's subjective symptom testimony. In addition, there are conflicting medical opinions in the record. For instance, the opinions of Drs. Finkleman and Settle conflict with Dr. Hale's opinion. The resolution of the conflicts between these medical opinions is firmly within the province of the ALJ. *See Dominguez v. Colvin*, 808 F.3d 403, 409-10 (9th Cir. 2015) (remanding for further proceedings rather than an award of benefits partly due to conflicting medical opinions); *see also Morgan*, 169 F.3d at 603 ("Determining whether inconsistencies [between medical opinions] are material . . . and whether certain factors are relevant to discount" medical opinions falls within the ALJ's responsibility.).

As outstanding issues remain regarding the medical opinion evidence, the RFC, Plaintiff's testimony, and Plaintiff's ability to perform jobs existing in significant numbers in the national economy, remand for further consideration of this matter is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 18th day of June, 2019.

David W. Christel
United States Magistrate Judge